THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| GERARDO AGUILAR TORRES,<br><br>            Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>            Respondent. | **MEMORANDUM DECISION<br>AND ORDER DENYING<br>§ 2255 MOTION**<br><br>Civil No. 4:21-cv-00097-DN<br>(Crim. No. 4:18-cr-00099-DN)<br><br>District Judge David Nuffer |

Movant Gerardo Aguilar Torres ("Mr. Aguilar") seeks to vacate, set aside, or correct the sentence in his underlying criminal case[1] pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").[2] Mr. Aguilar asserts two claims of relief based on ineffective assistance of counsel.[3] The government opposes the § 2255 Motion arguing that Mr. Aguilar cannot establish that his counsel's performance was constitutionally deficient or prejudicial.[4]

Mr. Aguilar's claims are unsupported and plainly contrary to the evidence and record in his underlying criminal case. The briefing on Mr. Aguilar's § 2255 Motion and the record of the underlying criminal case conclusively demonstrate that Mr. Aguilar cannot establish that his counsel's performance was constitutionally ineffective. Therefore, an evidentiary hearing is unnecessary and Mr. Aguilar's § 2255 Motion is DENIED and DISMISSED with prejudice. A Certificate of Appealability is also DENIED.

---

[1] *United States v. Torres*, Case No. 4:18-cr-00099-DN (D. Utah) ("Criminal Case").

[2] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), docket no. 1, filed Sep. 9, 2021.

[3] § 2255 Motion at 4–16.

[4] United States' Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 at 8–13, docket no. 5, filed Nov. 19, 2021.

Table of Contents
Background ........................................................................................................................ 2
Discussion ......................................................................................................................... 4
    Mr. Aguilar's Counsel provided effective assistance because Counsel's performance was neither constitutionally deficient nor prejudicial. ..................................................... 5
        Mr. Aguilar's Counsel was not constitutionally deficient ..................................... 5
        Mr. Aguilar was not prejudiced by Counsel's performance ................................. 8
    Mr. Aguilar received consideration for the appeal waiver ............................................. 12
    No Certificate of Appealability ...................................................................................... 13
Order ............................................................................................................................... 14

## BACKGROUND

On September 12, 2018, a law enforcement officer initiated a traffic stop on a vehicle Mr. Aguilar was driving.[5] Mr. Aguilar was the sole human occupant of the vehicle.[6] The officer subsequently searched the vehicle and found a large black suitcase containing 33 pounds of methamphetamine.[7]

In a post-arrest interview, Mr. Aguilar explained that he confided to an acquaintance that his twin brother was having kidney problems and needed money.[8] The acquaintance told Mr. Aguilar he could make $10,000 just for driving somewhere.[9] Mr. Aguilar said he was being paid $10,000 to drive round-trip from Kansas City, Kansas to Los Angeles, California.[10] Mr. Aguilar went to Los Angeles and met the acquaintance in a hotel parking lot.[11] That man brought a suitcase and put it in the backseat of Mr. Aguilar's vehicle and said he would see Mr. Aguilar

---

[5] Guideline Presentence Investigation Report ("PSR") ¶ 11 at 4, ECF no. 52 in Criminal Case, filed Jun. 25, 2019.

[6] PSR ¶ 11 at 4–5.

[7] *Id.* ¶ 14 at 5.

[8] *Id.* ¶ 15 at 5.

[9] *Id.*

[10] *Id.*

[11] *Id.*

back in Kansas City.[12] Mr Aguilar said he did not know what was in the suitcase but knew he was doing something illegal.[13] Mr. Aguilar was given $500 for food and expenses and was told he would receive the $10,000 when he arrived back in Kansas City.[14]

Mr. Aguilar was indicted for one count of possession of methamphetamine with intent to distribute under 21 U.S.C. § 841(a)(1).[15] On April 1, 2019, Mr. Aguilar pleaded guilty to the charge.[16] Mr. Aguilar waived his right to appeal and waived his right to challenge his sentence, except on the issue of ineffective assistance of counsel.[17] A Presentence Investigation Report ("PSR")[18] was prepared for Mr. Aguilar's sentencing hearing. Mr. Aguilar's Counsel ("Counsel") filed an Objection to the PSR ("Objection")[19] and a memorandum in support ("Sentencing Memorandum"),[20] arguing that Mr. Aguilar should receive downward adjustments in his sentencing level for being a minor or minimal participant in the crime under United States Sentencing Guidelines § 3B1.2 ("§ 3B1.2" or the "Guideline").[21] Both the probation office and

---

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] Information, ECF no. 12 in Criminal Case, filed Oct. 18, 2018.

[16] ECF no. 44 in Criminal Case, entered Apr. 1, 2019.

[17] Statement by Defendant in Advance of Plea of Guilty and Plea Agreement ("Plea Agreement") at 4, ECF no. 46 in Criminal Case, filed Apr. 1, 2019.

[18] PSR.

[19] Objection to Presentence Investigation Report ("Objection"), ECF no. 51 in Criminal Case, filed Jun. 24, 2019.

[20] Sentencing Memorandum Re: Minimal Participant ("Sentencing Memorandum"), ECF no. 53 in Criminal Case, filed Jun. 27, 2019.

[21] Counsel also argued for further level reductions provided in United States Sentencing Guideline § 2D1.1 that flow from application of a § 3B1.2 reduction. Because the court declined to apply the § 3B1.2 reduction, the other level reductions under § 2D1.1 are irrelevant.

the United States argued that, based on the facts, Mr. Aguilar was not a minor or minimal participant and so he was not eligible for level reductions under § 3B1.2.[22][23]

At the sentencing hearing, the court heard arguments from Counsel and the United States and concluded, based on review and analysis of the facts and the § 3B1.2(C) factors, that Mr. Aguilar was not a minor or minimal participant and so was ineligible for the § 3B1.2 level reduction.[24] Mr. Aguilar was sentenced to 70 months imprisonment.[25]

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner may seek to "vacate, set aside[,] or correct" the prisoner's sentence if that sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[26] For all motions brought under § 2255, a hearing must be held, "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[27]

In Mr. Aguilar's timely[28] § 2255 Motion, he argues that: (1) his sentence was the result of ineffective assistance of counsel;[29] and (2) the appeal waiver was the result of ineffective

---

[22] Addendum to Presentence Report at 1–2, ECF no. 52-1 in Criminal Case, filed Jun. 25, 2019; United States' Response to Defendant's Sentencing Memorandum ("Response"), ECF no. 59 in Criminal Case, SEALED, filed Jul. 2, 2019.

[23] The United States also argued that, per Commentary Note 2 of § 3B1.2, the Guideline does not apply unless more than one participant was involved in the offense. Response at 2; *see also* U.S. SENT'G GUIDELINES MANUAL § 3B1.2 n. 2 (U.S. SENT'G COMM'N 2015). However, the record shows the court made a fact-based determination regarding whether the adjustment applied, and denied the adjustment based on the facts and not based on Commentary Note 2 of § 3B1.2, so there is no need to address Commentary Note 2.

[24] Transcript of Sentencing Hearing ("Transcript") at 6:7–20:23, ECF No. 71 in Criminal Case, filed Sep. 13, 2019.

[25] Judgment in a Criminal Case at 2, ECF No. 61 in Criminal Case, filed Jul. 9, 2019.

[26] 28 U.S.C § 2255(a).

[27] *Id*. § 2255(b).

[28] Mr. Aguilar filed his § 2255 Motion within the 1-year period of limitation per 28 U.S.C. § 2255(f).

[29] § 2255 Motion at 4–14.

assistance of counsel.[30] As discussed below, both of Mr. Aguilar's arguments fail, and his § 2255 Motion will be dismissed.

### Mr. Aguilar's Counsel provided effective assistance because Counsel's performance was neither constitutionally deficient nor prejudicial.

The Sixth Amendment to the U.S. Constitution affords a criminal defendant the right to legal counsel at all critical stages of a criminal proceeding, including during sentencing.[31] "[T]he right to counsel is the right to the effective assistance of counsel."[32] For a defendant to prevail on a claim of ineffective assistance, the defendant must show that: (1) counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense.[33] Mr. Aguilar fails to show that Counsel's performance was deficient or that he was prejudiced by Counsel's performance.

*Mr. Aguilar's Counsel was not constitutionally deficient*

For Counsel's performance to be deficient, "the performance must be 'outside the wide range of professionally competent assistance.'"[34] Counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[35] "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."[36] The performance "must have been completely unreasonable, not merely wrong."[37]

---

[30] *Id*. at 14–16.

[31] *See* U.S. CONST. amend. VI; *see also Strickland v. Washington*, 466 U.S. 668, 685 (1984); *Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

[32] *Strickland*, 466 U.S. at 686 (citation omitted).

[33] *Id*. at 687.

[34] *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (citation omitted).

[35] *Strickland*, 466 U.S. at 687.

[36] *Id*. at 688.

[37] *Hooks*, 606 F.3d at 723 (citation omitted).

"Judicial scrutiny of counsel's performance must be highly deferential."[38] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[39]

Mr. Aguilar argues his Counsel's performance was deficient because Counsel failed to discuss: (1) the Sentencing Commission's analysis and the legislative history of the relevant laws and guidelines applicable to drug trafficking crimes; and (2) cases from this district where cross-country couriers received the reduction under § 3B1.2.[40]

In *United States v. Harfst*, the Tenth Circuit ruled that Harfst may have had a valid claim for ineffective assistance of counsel because Harfst's counsel had failed to present any argument to the district court that Harfst was a minor or minimal participant under § 3B1.2 and Harfst may have been eligible for the adjustment.[41] Harfst's counsel did not object to the presentence report or request an adjustment based on § 3B1.2:[42] he only asked the court "to consider whether or not [Harfst is] a minor or minimal participant based on the information the Court has available to it."[43] The Tenth Circuit said this was not enough: "Describing [Defendant's] role as minimal or minor is insufficient to raise the section 3B1.2 issue; counsel cannot properly invoke a particular Guideline provision 'merely by reciting to the court a list of mitigating facts.'"[44] The Tenth Circuit further noted that the district court had not viewed counsel's statement as a request for a

---

[38] *Strickland*, 466 U.S. at 689.

[39] *Id*.

[40] § 2255 Motion at 4.

[41] *United States v. Harfst*, 168 F.3d 398, 404 (10th Cir. 1999).

[42] *Id*.

[43] *Id*. at 402 (citation omitted).

[44] *Id*. (citation omitted).

§ 3B1.2 adjustment "since [the judge] did not comment on this request or make the required factual finding regarding whether defendant was entitled to the adjustment, and instead sentenced defendant without any apparent consideration of his role in the offense."[45]

In this case, Mr. Aguilar's Counsel did not "merely [] recit[e] to the court a list of mitigating facts,"[46] but he filed the Objection, the Sentencing Memorandum, and argued for the downward adjustment at the sentencing hearing. The Tenth Circuit in *Harfst* said that "an actual presentation by counsel of defendant's argument for an adjustment, although unsuccessful, would likely negate any claim of ineffective assistance of counsel."[47] Here, Mr. Aguilar's Counsel did *more* than simply present argument at the sentencing hearing.

There are no clearly prescribed rules that Counsel must follow to provide effective counsel. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another."[48] "There are countless ways to provide effective assistance in any given case."[49] Counsel's arguments focused on the facts of the case, which is consistent with § 3B1.2. Whether § 3B1.2 should be applied to a defendant "is based on the totality of the circumstances and involves a determination that is heavily dependent on the facts of the particular case."[50] Choosing not to cite to cases may have been a strategic decision by Counsel. Counsel may have decided not to discuss case law because he did not find cases that strongly supported Mr. Aguilar's case. Indeed, the cases Mr. Aguilar cites are not clearly similar

---

[45] *Id*.

[46] *Id*.

[47] *Id*.

[48] *Strickland*, 466 U.S. at 693.

[49] *Id*. at 689.

[50] U.S.S.G. § 3B1.2 n.3(C).

enough to his own case to provide very persuasive argument.[51] Similarly, Counsel's decision not to exhaustively[52] discuss the legislative history does not make Counsel's performance defective. The weight of the legislative history Mr. Aguilar presents is minimal, as application of § 3B1.2 is based on the facts of the case and the factors provided in Note 3(C) of § 3B1.2 ("3(C) Factors"). Counsel's decision to focus on applying the facts to the 3(C) Factors was reasonable. Based on the record, the performance of Mr. Aguilar's counsel was not deficient.

*Mr. Aguilar was not prejudiced by Counsel's performance*

Mr. Aguilar fails to show that Counsel's performance was deficient. But even if Mr. Aguilar successfully argued that Counsel's performance was deficient, that would not be enough: the deficiency must have resulted in prejudice to Mr. Aguilar. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[51] Mr. Aguilar cites to the following cases, § 2255 Motion at 12–13, each with different circumstances and facts: *United States v. Tankson*, Case No. 2:17-cr-00543-JNP (D. Utah) (defendant had 2 pounds of heroin and 14 pounds of cocaine, less than half the amount of drugs Mr. Aguilar was carrying, and the amount of money defendant would receive from the job was unknown); *United States v. Olvera*, Case No. 4:18-cr-00091-DN (D. Utah) (defendant received a sentence of 66 months (just four less than Mr. Aguilar), had about 26 pounds of drugs, and amount of money defendant would receive from the job was unknown); *United States v. Mendez-Lopez*, Case No. 4:18-cr-00116-DN (D. Utah) (defendant was carrying less than one-third the amount of drugs Mr. Aguilar was transporting, amount of money defendant would receive from job was unknown); *United States v. Medina*, Case No. 2:15-cr-00650-DS (D. Utah) (defendant was transporting less than half the amount of drugs than Mr. Aguilar, did not know who defendant was transporting the drugs for, and would receive $7,000 for the job); *United States v. Rubio*, Case No. 2:16-cr-00303-DAK (D. Utah) (defendant was carrying less than half the amount Mr. Aguilar was carrying, the amount defendant would receive was unknown, was given phone number of person for pick-up, and co-defendant was in charge of the financial part of the operation); *United States v. Lomeli*, Case No. 2:17-cr-00112-DS (D. Utah) (defendant had 22 pounds of drugs, co-defendant was offered $3,000 to transport and would split the money with defendant, defendant was driving co-defendant's vehicle); *United States v. Duran*, Case No. 2:15-cr-00735-RJS (D. Utah) (defendant had under 5 pounds of drugs, was offered $1,500, and contacted unknown persons for both pick-up and drop-off); *United States v. Hernandez*, Case No. 2:14-cr-00220-RJS (D. Utah) (defendant transporting about 23 pounds of drugs, knew he was transporting something but was unaware of the amount of drugs contained in an altered compartment built under the vehicle, was not paid as promised and payment amount offered unknown); and *United States v. Schonewolf*, 2:10-cr-00331-CW (D. Utah) (defendant transporting less than half Mr. Aguilar's amount, was transporting the drugs for defendant's father, any payment amount for transport unknown).

[52] Counsel referenced his research of the Sentencing Commission's intentions for § 3B1.2 during the sentencing hearing and argued Mr. Aguilar's case based in part on the Sentencing Commission's intentions. Transcript 7:5–8:18.

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[53]

The Tenth Circuit has held that the failure to request § 3B1.2 adjustments when sentencing drug couriers who are allegedly part of large operations may result in prejudice to a defendant.[54] The prejudice analysis in the Tenth Circuit "focuses not solely on the failure to make the argument for a reduction to the district court, but on the ultimate success of the argument."[55] "In other words, whether defendant was prejudiced by Counsel's failure to request a § 3B1.2 adjustment depends on whether the district court would have granted the request."[56]

Note 3(C) of § 3B1.2 establishes a fact-based, totality of the circumstances test for determining whether the Guideline applies. The court is to consider the following factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

The court addressed each of these factors at the sentencing hearing and concluded that Mr. Aguilar was not eligible for the reduction. The transcript provides:

---

[53] *Strickland*, 466 U.S. at 694.

[54] *Harfst*, 168 F.3d at 404.

[55] *Id*.

[56] *Id*.

> "I think the biggest challenges here in applying this adjustment would be the degree to which the defendant exercised decisionmaking authority. He had complete control of his vehicle on both legs of the roundtrip, the nature and extent of his participation and the commission of the criminal activity . . . [t]he degree to which the defendant stood to benefit . . . the degree to which the defendant understood the scope and structure might be the least significant of the factors, but it's clear [he] understood that he was carrying something of great value a great distance and that without his transportation the activity would cease."[57]

Mr. Aguilar's discussion of the legislative history of drug trafficking laws and law review articles focus on the relationship between quantity of drugs and culpability, but the court did not focus only on the large quantity of drugs Mr. Aguilar was transporting, but on Mr. Aguilar's decisionmaking authority and how much he stood to benefit from the activity. Quantity is just one factor the court considered, and the record shows that other factors weighed heavily against granting Mr. Aguilar the adjustment.

Mr. Aguilar also argues that he was a simple courier, but the Tenth Circuit "has refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's status as a drug courier."[58] "The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant."[59] "Instead, a downward adjustment for a defendant's role in an offense turns on the defendant's culpability relative to other participants in the crime."[60] The court found Mr. Aguilar's culpability was serious:

> "This defendant engaged in extensive activity in this criminal enterprise. This was not accidental or on the spur of the moment or not well thought out. There was a lot of deliberation in it. The consequences of the distribution of this drug would have been very severe, and the amount of money received would have been significant."[61]

---

[57] Transcript 6:13–25.

[58] *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993) (citation omitted).

[59] *United States v. Calderon-Porras*, 911 F.2d 421, 423–24 (10th Cir. 1990).

[60] *Rangel-Arreola*, 991 F.2d at 1524.

[61] Transcript 20:3–9.

Mr. Aguilar asserts that the Sentencing Commission intended that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for a mitigating role adjustment."[62] Mr. Aguilar was considered for a mitigating role adjustment and the court determined he did not qualify.

Finally, Mr. Aguilar's argument about the court's finding that Mr. Aguilar didn't qualify for a role reduction "essentially preclude[s] *all* couriers from receiving a role reduction as a matter of law"[63] is simply false. Mr. Aguilar fails to recognize that factual distinctions between cases are key because application of the Guideline is ultimately a fact-based determination that "is heavily dependent upon the facts of the particular case."[64]

In this case, unlike in *Harfst*, the court made "the required factual findings regarding whether defendant was entitled to the adjustment."[65] Counsel's decision not to cite case law or discuss the legislative history did not "undermine[] the reliability of the result of the proceeding."[66]

"[W]hether defendant was prejudiced by counsel's failure to request a § 3B1.2 adjustment depends on whether the district court would have granted the request."[67] In Mr. Aguilar's case, there was no prejudice: Counsel did *not* fail to request a § 3B1.2 adjustment, but advocated for the adjustment. The court simply found the circumstances to be different from a minor courier transportation situation and declined to apply the downward adjustment based on

---

[62] § 2255 Motion at 11.

[63] *Id*.

[64] U.S.S.G. § 3B1.2 n.3(C).

[65] *Harfst*, 168 F.3d at 402.

[66] *Strickland*, 466 U.S. at 693.

[67] *Harfst*, 168 F.3d at 404.

the 3(C) Factors. The record supports the court's findings. Counsel's performance did not prejudice Mr. Aguilar.

### Mr. Aguilar received consideration for the appeal waiver

Mr. Aguilar argues that "[r]easonable counsel would have ensured that sufficient consideration was offered before advising a defendant to accept an appeal waiver as part of a plea agreement."[68] Mr. Aguilar argues that he received no concession from the government in exchange for the appeal waiver because of ineffective assistance of counsel.[69]

In the Plea Agreement, the United States agreed to recommend a safety valve, two-level reduction under § 5C1.2, and an acceptance of responsibility two-level reduction under § 3E1.1(a).[70] The United States also filed a Motion for Sentencing Departure ("Departure Motion")[71] recommending a 2-level reduction under § 5K1.1 of the Sentencing Guidelines. The Department Motion was granted, bringing Mr. Aguilar's guideline range from 87–108 months down to 70–87 months.[72]

Mr. Aguilar's appeal waiver arguments reveal a fundamental misunderstanding of plea agreements and consideration. "[C]ontract principles govern plea agreements[.]"[73] "[C]ontract law does not require consideration to be broken down clause-by-clause, with each promise matched against a mutual and similar promise by the other side."[74] "An appeal waiver ... gives

---

[68] § 2255 Motion at 14.

[69] *Id*.

[70] Plea Agreement ¶ 12c–d at 4.

[71] Motion for Sentencing Departure Pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1, ECF no. 55 in Criminal Case, SEALED, filed Jun. 28, 2019.

[72] Transcript 5:14–5:20.

[73] *United States v. Miles*, 902 F.3d 1159, 1160 (10th Cir. 2018) (citation omitted).

[74] *Id*. at 1160–61 (citing *United States v. Hare*, 269 F.3d 859, 861 (7th Cir. 2001)).

the defendant an additional bargaining chip to use in securing a plea agreement with the government[.]"[75]

In *United States v. Miles*, the Tenth Circuit held that the government's agreement "to dismiss two of the four counts in the indictment, to give Miles full credit for acceptance of responsibility, and to recommend a sentence at the low end of the guidelines range" was sufficient consideration for Miles' appeal waiver.[76] Mr. Aguilar similarly received sufficient consideration for his appeal waiver.

The Tenth Circuit also reviewed Mr. Aguilar's appeal waiver argument and we agree with the Tenth Circuit's finding that "Mr. Aguilar received consideration for his waiver."[77] Because Mr. Aguilar's ineffective assistance of counsel claim is based on the meritless assertion that he received no consideration for his appeal waiver, his ineffective assistance of counsel claim fails.

## No Certificate of Appealability

Mr. Aguilar has failed to "ma[k]e a substantial showing of the denial of a constitutional right"[78] in his § 2255 Motion, so a Certificate of Appealability under Rule 11 of the Rules Governing Section 2255 Proceedings cannot issue.

---

[75] *Id*. at 1160 (citing *United States v. Powers*, 885 F.3d 728, 733 (D.C. Cir. 2018)).

[76] *Miles*, 902 F.3d at 1161.

[77] *United States v. Aguilar Torres*, 812 F. App'x 751, 753 (10th Cir. 2020) (unpublished).

[78] 28 U.S.C. § 2253(c)(2).

**ORDER**

THEREFORE, IT IS HEREBY ORDERED that Mr. Aguilar's § 2255 Motion[79] is DENIED and DISMISSED with prejudice.

IT IS FURTHER ORDERED that a Certificate of Appealability under Rule 11 of the Rules Governing Section 2255 Proceedings is DENIED.

The Clerk is directed to close the case.

Signed January 24, 2022.

BY THE COURT

David Nuffer
United States District Judge

---

[79] Docket no. 1, filed Sep. 8, 2021.